UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 19-22357-CIV-MORENO

GVB MD *d/b/a* MIAMI BACK
AND NECK SPECIALISTS,

    Plaintiff,

vs.

AETNA HEALTH INC.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

In this insurance benefit dispute, Plaintiff GVB MD *d/b/a* Miami Back and Neck Specialists asserts six claims under Florida law for breach of contract, unjust enrichment, *quantum meruit*, promissory estoppel, and declaratory relief against Defendant Aetna Health Inc. Specifically, Miami Back alleges it provided medically necessary back procedures and treatments to patients insured by Aetna, after Aetna verified the procedures and treatments were covered by applicable health insurance plans. Miami Back further claims that Aetna subsequently failed to pay altogether, or in full, for the procedures and treatments provided to Aetna's members.

Aetna filed a Motion to Dismiss **(D.E. 7)** asking the Court to dismiss five counts of the Complaint on grounds that Miami Back's claims are either preempted by the Employee Retirement Insurance Security Act or the allegations otherwise fail to state claims upon which relief can be granted. Miami Back's Opposition insists that all of its claims survive dismissal.

THE COURT has considered the Motion, the Opposition, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the Motion to Dismiss is **GRANTED**.

# I. BACKGROUND

Plaintiff Miami Back is an out-of-network medical provider that specializes in minimally invasive orthopedic spine surgery, and that treats patients with neck and back pain, degenerative disc disease, nerve compression, spinal cord compression, scoliosis, and spinal fractures.

In this case, Miami Back seeks reimbursement for medical services provided to 10 of Defendant Aetna Health Inc.'s insured members and health insurance plan subscribers (the "Members"). The intake and admission process at Miami Back requires that Members execute a written assignment of benefits, which assigns to Miami Back the Members' rights to receive benefits under applicable health insurance plans. According to Miami Back, spinal surgeries and other medical treatments were performed for Aetna's Members only after Aetna confirmed the procedures were covered by applicable insurance plans.

After Aetna failed to reimburse Miami Back altogether, or in full, for the treatments provided to the Members, Miami Back filed a 6-count Complaint in the Eleventh Judicial Circuit in and for Miami-Dade County. The Complaint asserts claims for breach of contract, breach of a third-party beneficiary contract, unjust enrichment, *quantum meruit*, promissory estoppel, and declaratory relief. Aetna removed the case to federal court and filed the underlying Motion to Dismiss.

# II. LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While legal conclusions can provide

the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. Detailed factual allegations are not required, but a complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of the cause of action." *Twombly*, 550 U.S. at 555 (citation omitted). The factual allegations must be enough to "raise a right to relief above the speculative level." *Id.* (citations omitted). Finally, at the motion to dismiss stage, the Court must view the allegations in the complaint in the light most favorable to the plaintiff and accept well-pleaded facts as true. *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of Am.*, 795 F.2d 948, 954 (11th Cir. 1986).

### III. DISCUSSION

Aetna requests dismissal of Miami Back's claims for breach of contract (Count 1), unjust enrichment (Count 3), *quantum meruit* (Count 4), promissory estoppel (Count 5), and declaratory judgment (Count 6).[1] The Court addresses each count in turn.

#### A. BREACH OF CONTRACT (COUNT 1)

In Count 1, Miami Back alleges breach of contract under Florida law. Aetna seeks dismissal of Count 1 on federal preemption grounds, to the extent this claim seeks payments for the value of services rendered by Miami Back to Aetna's Members under health insurance plans governed by the Employee Retirement Income Security Act ("ERISA").[2]

The Employee Retirement Income Security Act provides that it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Federal preemption under ERISA may take one of two forms: "defensive" preemption, or "complete" preemption. *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1211–12

---

[1] Aetna does not ask the Court to dismiss Count 2.
[2] Aetna extends this argument to Counts 3 through 6, to the extent those claims also seek payments related to health insurance plans governed by ERISA.

(11th Cir. 1999).[3] Here, Aetna contends Miami Back's claims should be dismissed as defensively preempted.

A state law claim is defensively preempted by ERISA if it "relates to" an ERISA plan. *Id.* at 1215 (citing 29 U.S.C. § 1144(a)). The Supreme Court has ruled that a state law "relates to" an employee benefit plan "in the normal sense of the phrase," that is, "if it has a connection with or reference to such a plan." *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)). This includes situations where the alleged conduct at issue is "intertwined with the refusal to pay benefits." *Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (citations omitted). Ultimately, defensive preemption "require[s] dismissal of state-law claims." *Butero*, 174 F.3d at 1212.

Here, Miami Back alleges that Aetna provides a variety of health insurance plans to its Members, which includes among others, "employer-sponsored benefit plans." (D.E. 1-1 at 2–3, ¶ 3.) Miami Back further alleges, however, that it "does not have access to the terms of the Plans applicable to the claims at issue in this case, as Aetna is in sole possession of those Plans and has never supplied or offered to supply those plans to Miami Back." *Id.* at 6, ¶ 24. As a result, Miami Back concedes in its Opposition that it "is not confident one way or the other" whether some of its claims include patients with health insurance plans governed by ERISA. (*See* D.E. 10 at 4.) Miami Back goes on to argue that "[w]hile the statute may preempt any corresponding state law claims with respect to Members with ERISA plans, it cannot preempt non-ERISA claims as Defendant suggests." *Id.* at 4.

The problem with Miami Back's position is this: it is the plaintiff who "bear[s] the exclusive burden of establishing the existence of any plan from which their non-ERISA claims arise"—

---

[3] In contrast to defensive preemption, which acts a substantive defense, complete preemption is jurisdictional in nature. *See Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006) (citing *Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1014 (11th Cir. 2003)).

"a burden that is inextricably intertwined with" a plaintiff's duty under Rule 8 to make a short and plain statement of the claim showing the pleader is entitled to relief. *Biohealth Med. Lab., Inc. v. Conn. Gen. Life Ins. Co.*, No. 1:15-CV-23075-KMM, 2016 WL 375012, at *6 (S.D. Fla. Feb. 1, 2016), *aff'd in part, vacated in part*, *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521 (11th Cir. 2017) (citing Fed. R. Civ. P. 8(a)(2)).

Like this case, *Biohealth Med. Lab.* involved an insurance benefit dispute arising out of two insurance companies' refusal to pay claims for toxicology testing performed by the laboratories *after* the insurance companies verified the testing was covered by applicable health insurance plans. 2016 WL 375012, at *1. The laboratories filed a complaint that asserted a federal ERISA claim and claims under Florida law for breach of contract, breach of fiduciary duty, and promissory estoppel. *Id.* at *2. In addition to ruling that the laboratories had standing to assert breach of fiduciary duty claims, but did not have standing to assert claims under "self-funded" plans,[4] the district court dismissed state law claims "arising from . . . non-ERISA plans" because the complaint did not "identify any [non-ERISA] plan(s)." *Id.* at *3–5. Notably, the district court concluded the laboratories failed to adequately allege state law claims even though they attached spreadsheets to their complaint that identified both the insurance claims that were improperly denied and the insurance companies' claim identification numbers. *Id.* at *5. The district court ruled that "merely claiming that some of the member claims arise under non-ERISA plans is insufficient to provide fair notice" to the defendants. *Id.*

Just like the laboratories in *Biohealth Med. Lab.*, Miami Back attaches to its Complaint a chart summarizing unpaid insurance claims. (*See* D.E. 1-1 at 17–18, Ex. A.) But neither the information

---

[4] The plaintiffs "appeal[ed] only the district court's ruling that they lack[ed] standing to raise claims arising from self-funded plans." *See BioHealth Med. Lab., Inc.*, 706 F. App'x at 522, 525. Thus, the Eleventh Circuit's order vacating the ruling on standing has no bearing on Miami Back's burden to establish the existence of applicable insurance plans.

in the chart, nor the allegations in the Complaint, identify or distinguish between any ERISA or non-ERISA insurance plans. To start, the chart only includes redacted patient names, patient account numbers, dates of service, CPT codes, billed amounts, and member IDs—but no distinction is made between ERISA and non-ERISA insurance plans. *See id.* Turning to the Complaint, Miami Back summarily alleges without more that "[t]he Plans covering the Members identified on Exhibit A are valid and enforceable insurance contracts." *Id.* at 9, ¶ 42. In addition, the Complaint includes only two allegations that reference employer-based health insurance plans. First, the general allegations assert that "Aetna provides health care insurance, administration, and/or benefits to insureds or plan participants pursuant to a variety of health care benefit plans and policies of insurance, including employer-sponsored benefit plans, government-sponsored benefit plans, and individual health benefit plans . . . ." *Id.* at 2–3, ¶ 3. And second, in the allegations specific to Count 2, the Complaint asserts that "[t]o the extent the Plans are not issued pursuant to an employee benefit plan, Defendant's failure to pay for the medically necessary services provided by Plaintiffs to the Members constitutes a breach of contract under Florida law." *Id.* at 10, ¶ 48. Again, neither of these allegations identifies or distinguishes between any ERISA or non-ERISA insurance plans.

As currently pleaded, it is possible that all of Miami Back's insurance claims "relate to" ERISA plans, thus defensively preempting the breach of contract claim; but it is equally possible that all of Miami Back's insurance claims concern non-ERISA plans, paving the way for state law claims to proceed. At bottom, though, it is Miami Back's "exclusive burden" as the plaintiff to establish the existence of non-ERISA health insurance plans in order to state a claim for breach of contract. *See Biohealth Med. Lab., Inc.*, 2016 WL 375012, at *6.

Miami Back argues it is entitled "to plead its state law claims in the alternative, to provide Plaintiff with a remedy to the extent any of the plans fall outside the reach of ERISA." (D.E. 10 at 3.) Although the Federal Rules permit Miami Back to "set out 2 or more statements of a claim or defense

alternatively or hypothetically, either in a single count or defense or in separate ones," Fed. R. Civ. P. 8(d)(2), that is not really what Miami Back pleads. Rather, that is what Miami Back argues it pleaded when faced with Aetna's preemption argument.

First off, the Complaint asserts only a breach of contract claim; it does not assert an ERISA claim. So it is unclear how Miami Back's breach of contract claim is pleaded in the alternative "to the extent any of the plans fall outside the reach of ERISA." (D.E. 10 at 3.) Indeed, the breach of contract claim is entirely about getting reimbursed for treatments covered by health insurance plans falling outside the reach of ERISA. And secondly, to the extent Miami Back meant to argue that it pleaded an ERISA claim in the alternative to its breach of contract claim, there are no allegations to support this reading of the Complaint. (*See generally* D.E. 1-1 at 2–15.)

In any event, unnecessary issues are created at the dismissal stage when a plaintiff attempting to plead causes of action in the alternative—where the viability of each claim depends on a dispositive distinction between ERISA and non-ERISA health insurance plans—fails to allege the facts necessary to establish the very distinction that its claims in the alternative require. A prime example is that Miami Back's breach of third-party beneficiary contract claim in Count 2 is limited to non-ERISA plans, and quite notably, this is the only claim Aetna did not move to dismiss. (*See* D.E. 1-1 at 10, ¶ 48 ("To the extent the Plans are not issued pursuant to an employee benefit plan, Defendant's failure to pay for the medically necessary services provided by Plaintiff to the Members constitutes a breach of contract under Florida law.").) On the other hand, the allegations in Count 1—which do not make this factual distinction—invited Aetna's preemption challenge, thereby creating an additional hurdle for Miami Back to state a cognizable breach of contract claim.

Additionally, although not raised by Aetna, this entire discussion underscores that this kind of pleading runs the risk of "commit[ting] the sin of not separating into a different count each cause of action or claim for relief," and thereby failing to give Aetna "adequate notice of the claims against

[it] and the grounds upon which each claim rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322–23 (11th Cir. 2015). And finally, as discussed above, the failure to distinguish between insurance claims arising under ERISA and non-ERISA health insurance plans has stopped Miami Back from satisfying its burden to establish the existence of applicable insurance plans. *See Biohealth Med. Lab., Inc.*, 2016 WL 375012, at *5–6.

Perhaps these pleading deficiencies stem from Aetna being "in sole possession of" the applicable health insurance plans. (D.E. 1-1 at 6, ¶ 24.) So, between now and January 10, 2020—the deadline the Court is setting for Miami Back to amend the Complaint—the issue of whether the applicable insurance claims arise under ERISA or non-ERISA health insurance plans should become clear through initial discovery. If in fact the insurance claims submitted by Miami Back do not "relate to" ERISA, then the amended complaint should allege so (and there would be no reason to assert an ERISA claim in the alternative, separately or within the same count). But if Miami Back submitted insurance claims under ERISA and non-ERISA plans, Miami Back should strongly consider whether a federal ERISA claim should be pleaded in a separate count from the state law breach of contract claim. *See, e.g.*, Fed. R. Civ. P. 10(b) ("If doing so would *promote clarity*, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense.") (emphasis added).

Looking forward, the Court notes that federal ERISA claims will not withstand dismissal if the complaint "simply states that all insurance plans subject to this litigation are 'group health insurance policies [that] constitute employee welfare plans as defined by The Employee Retirement Security Act'" because "[s]uch conclusive allegations are not sufficient to pass the pleading notice requirements under *Twombly*." *In re Managed Care Litig.*, Master File No. 00-1334-MD, Tag–Along Case No. 08–20005–CIV, 2009 WL 742678, at *3 (S.D. Fla. Mar. 20, 2009) (citing *Twombly*, 550 U.S. at 555). As this Court previously explained, "[w]ithout describing an ERISA plan, Defendants

cannot reasonably ascertain what the intended benefits were or who [were] the proper beneficiaries under a given plan. Although the allegations in the Complaint do not need to describe a given plan in detail, such as to identify each plan's policy number, the allegations must be sufficient to raise the existence of an ERISA plan above speculative level. As such, failure to identify the controlling ERISA plans makes the Complaint unclear and ambiguous." *Id.*[5]

Turning back to the present allegations, the Court finds the Complaint does not identify any non-ERISA plans (or ERISA plans for that matter). Therefore, the Court cannot conclude that Miami Back has plausibly alleged breach of contract under Florida law. *See Biohealth Med. Lab., Inc.*, 2016 WL 375012, at *6. For this reason, the Motion to Dismiss is **GRANTED** as to Count 1, which is accordingly **DISMISSED WITHOUT PREJUDICE**. Furthermore, Miami Back is granted leave to file an amended complaint to cure its pleading deficiencies.

### B. <u>UNJUST ENRICHMENT (COUNT 3)</u>

In Count 3, Miami Back asserts an unjust enrichment claim to get reimbursed for the value of unpaid medical treatments provided to Aetna's Members. Aetna argues this claim should be dismissed with prejudice because no direct benefits were conferred on Aetna, as required to state an unjust enrichment claim.

To state a claim for unjust enrichment under Florida law, a complaint must allege: (1) the plaintiff conferred a benefit on the defendant, who has knowledge thereof; (2) the defendant

---

[5] Other courts in this District have recognized the same. *See, e.g., RMP Enters., LLC v. Conn. Gen. Life Ins. Co.*, No. 9:18-CV-80171, 2018 WL 6110998, at *5 (S.D. Fla. Nov. 21, 2018) (dismissing with prejudice ERISA claim lacking "basic and necessary facts" due to the plaintiffs "continued failure to identify the particular patients, claims, services, or dates of service at issue, notwithstanding the benefit of the Court's instruction on this point") (collecting cases); *Gould v. Univ. of Miami*, No. 16-25233-CIV, 2017 WL 4155479, at *10 (S.D. Fla. Sept. 19, 2017) (ordering *sua sponte* that the plaintiff file a more definite statement in an amended complaint identifying applicable ERISA and other benefit plans and providing "enough information to allow the Defendant and the Court to know the basis of the Plaintiff's ERISA claims, sufficient for the Defendant to file an appropriate responsive pleading, and for the Court to assess the viability of those claims").

voluntarily accepts and retains the conferred benefit; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *See Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) (citations omitted). Importantly, the Florida Supreme Court has ruled the plaintiff "must directly confer the benefit to the defendant." *See Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (citing *Peoples Nat'l Bank of Comm. v. First Union Nat'l Bank of Fla. N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996)); *see also Harvey v. Fla. Health Scis. Ctr., Inc.*, 728 F. App'x 937, 946 (11th Cir. 2018) (noting same).

Here, the Court finds that Miami Back fails to state a claim for unjust enrichment because Miami Back "can hardly be said to have conferred any benefit, even an attenuated one, upon [Aetna] by providing [the Members] with health care services." *GVB MD, LLC v. United Healthcare Ins. Co.*, No. 19-20727-CIV, 2019 WL 3409183, at *8 (S.D. Fla. May 9, 2019), *report and recommendation adopted*, 2019 WL 3408925 (S.D. Fla. May 28, 2019) (quoting *Hialeah Physicians Care, LLC v. Conn. Gen. Life Ins. Co.*, 2013 WL 3810617, at *4 (S.D. Fla. July 22, 2013)). "[A]s a matter of commonsense, the benefits of healthcare treatment flow to patients, not insurance companies," and as such, "a third-party providing services to an insured confers nothing on the insurer except, a ripe claim for reimbursement, which is hardly a benefit." *Adventist Health Sys./Sunbelt Inc. v. Med. Sav. Ins. Co.*, No. 6:03-cv-1121-Orl-19KRS, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004); *see also Peacock Med. Lab, LLC v. UnitedHealth Grp., Inc.*, No. 14-81271-CV, 2015 WL 2198470, at *5 (S.D. Fla. May 11, 2015) ("[A] healthcare provider who provides services to an insured does not benefit the insurer."); *cf. Hialeah Physicians Care, LLC*, 2013 WL 3810617, at *4 ("If [plaintiff] conferred no benefit upon the Plan's insurer by providing treatment to Plan beneficiaries, common sense dictates that [defendant], as the claims administrator, cannot be said to

have received a benefit from the same conduct.").[6]

Miami Back directs the Court to another ruling in this District, which found that a plaintiff adequately pleads an unjust enrichment claim by alleging it provided medical services to the defendant insurer's members. (*See* D.E. 10 at 8 (citing *Nordt v. Colina Ins. Ltd.*, No. 17-21226-CIV, 2017 WL 4225550, at *7 (S.D. Fla. Sept. 22, 2017).) Although *Nordt* initially allowed the unjust enrichment claim to proceed past the dismissal stage, a later decision in that case explained that the parties' "scant briefing . . . did not even approach the question regarding whether *direct* conferral of a benefit from a plaintiff to a defendant [was] required to satisfy the first element of unjust enrichment under Florida law, nor did the [previous] Order touch on that." *John C. Nordt, III, M.D. & Assocs., P.A. v. Colina Ins. Ltd.*, No. 17-21226-CIV, 2018 WL 2688793, at *3 (S.D. Fla. Apr. 13, 2018) (emphasis added). After reviewing Florida Supreme Court and Eleventh Circuit case law, which confirmed that a *direct* benefit must be conferred on the defendant to state an unjust enrichment claim under Florida law, the district court ruled that the plaintiff "failed to show how providing medical services to [the defendant's] insureds conferred a direct benefit on [the defendant]." *See id.* at *4 ("Since any benefit [the plaintiff] may have conferred on [the defendant was] indirect at best, [the plaintiff] fail[ed] to establish an essential element of unjust enrichment, rendering all other facts

---

[6] Miami Back attempts to distinguish *Hialeah* and *Peacock* on grounds they "erroneously rely only on *Adventist*," which in turn "relied on South Carolina and New York substantive law." (D.E. 10 at 9.) The Court disagrees with this characterization of *Adventist*. While the *Adventist* court cited decisions from the South Carolina Supreme Court and the Southern District of New York, it ultimately ruled the plaintiff failed to state an unjust enrichment claim because "as a matter of *commonsense*, the benefits of healthcare treatment flow to patients, not insurance companies," and, because "cases interpreting *Florida* law require the 'benefit' in an unjust enrichment claim to be direct, not indirect or attenuated, as would be any putative 'benefit' conferred on an insurer by treating its insureds." *See Adventist Health*, 2004 WL 6225293, at *5–6 (citing *Nova Info. Sys. v. Greenwich Ins. Co.*, No. 6:00CV1703ORL31 KRS, 2002 WL 32075792 (M.D. Fla. Dec. 13, 2002); *Se. Fla. Laborers Dist. Health & Welfare Tr. Fund v. Philip Morris*, No. 97–8715–CIV–RYSKAMP, 1998 WL 186878, at *4 (S.D. Fla. Apr. 13, 1998)) (emphases added). The Court agrees with the well-reasoned analysis in *Adventist*, which was subsequently followed in this District in *Hialeah* and *Peacock*.

immaterial.").

Taking the allegations in the Complaint as true and viewing them in the light most favorable to Miami Back, the Court finds that any benefit conferred on Aetna was indirect at best. Consequently, the Court finds Miami Back cannot state a claim for unjust enrichment under Florida law. Therefore, Aetna's Motion to Dismiss is **GRANTED** as to Count 3, which is accordingly **DISMISSED WITH PREJUDICE**. *See Hialeah Physicians Care, LLC*, 2013 WL 3810617, at *4 (dismissing unjust enrichment claim with prejudice).[7]

### C. *QUANTUM MERUIT* (COUNT 4)

In Count 4, Miami Back asserts a *quantum meruit* claim also seeking reimbursement for the value of unpaid medical services provided to Aetna's Members. Aetna argues this claim should be dismissed with prejudice because Aetna did not express any discernable intentions to create a quasi-contractual situation.

To state a claim for *quantum meruit* under Florida law, a complaint must allege that the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it. *White Holding Co., LLC v. Martin Marietta Materials, Inc.*, 423 F. App'x 943, 947 (11th Cir. 2011) (quoting *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009)). *Quantum meruit* claims arise when parties

---

[7] The Court notes that Miami Back recently advanced a similar, if not identical claim, for unjust enrichment against another health insurance company. In that case, the district court dismissed the claim without prejudice and granted Miami Back leave to amend. But even after Miami Back amended its complaint, the Magistrate Judge issued another Report and Recommendation recommending that the district court dismiss the claim because "even if the Court was to accept all of Plaintiff's factual allegations as true, those facts would still fail to demonstrate that [the Plaintiff] conferred a *direct* benefit on [the Defendant]." *See GVB MD, LLC*, 2019 WL 5260274, at *4 (emphasis in original). After "independently review[ing] the Report, the objections, the record, and applicable case law," the district court affirmed and adopted the Report and Recommendation, dismissed the unjust enrichment claim, and ordered the defendant to answer the remaining claims. *See GVB MD, LLC*, 2019 WL 5260178.

"have expressed discernible intentions and created either incomplete contracts or something, very similar to a contract." *Adventist Health*, 2004 WL 6225293, at *4. In contrast to unjust enrichment claims, the threshold question in the *quantum meruit* context is whether there was a "meeting of the minds" between the parties, *id.*, which is shown by "a tacit promise, one that is inferred in whole or in part from the parties' *conduct*, not solely from their words," *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1368–69 (S.D. Fla. 2017) (quoting *Comm. P'ship, 8098 Ltd. P'Ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997)) (emphasis added).

Here, Miami Back alleges that it performed medical treatments only after receiving confirmation from Aetna that the treatments were "covered and authorized," and after Miami Back received from Aetna "a reference number for future reference of the patients' insurance coverage details," which indicated "that Aetna would pay, at least in part, for the services rendered by Plaintiff." (D.E. 1-1 at 7, ¶¶ 30–31.) Miami Back further alleges that it submitted claim forms, in compliance with Aetna's "policies and procedures," that requested payment for procedures provided to Aetna's Members. *Id.* at ¶ 32. Based on these allegations, Miami Back concludes in its Opposition that it provided the medically necessary treatments to Aetna's Members with Aetna's knowledge and approval, and under circumstances fairly raising the presumption that the parties understood and intended that Aetna would pay the reasonable value of those services. (D.E. 10 at 10.)

Without more, Miami Back's verification of coverage allegations do not support a claim for *quantum meruit* because, as courts across the country agree, "an insurer's verification of coverage is not a promise to pay a certain amount." *RMP Enters., LLC*, 2018 WL 6110998, at *8 (collecting cases). Consistent with this widely-held conclusion, several courts in this District have dismissed *quantum meruit* claims on similar allegations because these allegations do not establish an insurer's *assent* to pay for medical services provided to its members. *See, e.g., GVB MD, LLC*, No. 19-20727-CIV, 2019 WL 5260274, at *5–6 (S.D. Fla. Aug. 14, 2019), *report and recommendation*

*adopted*, 2019 WL 5260178 (S.D. Fla. Sept. 5, 2019) (dismissing *quantum meruit* claim based on allegation the defendant "confirmed that its patients were covered under certain healthcare plans and that Defendant made sporadic payments for some of the services rendered"); *RMP Enters., LLC*, 2018 WL 6110998, at *8 (dismissing with prejudice *quantum meruit* claim based on "alleged oral verification of coverage" and noting "[c]ourts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount"); *Peacock*, 2015 WL 2198470, at *5 (dismissing *quantum meruit* claim based on allegation the defendants "made payments either inconsistently or not at all" and explaining "[t]his conduct shows that Defendants never assented to pay for the provided services. If anything, it shows they assented not to pay for them").

Miami Back invites the Court to deny the Motion to Dismiss based on *Watershed Treatment Programs, Inc. v. United Healthcare Ins. Co.*, No. 07-80091 CIV, 2007 WL 1099124 (S.D. Fla. Apr. 10, 2007). There, the district court declined to dismiss a *quantum meruit* claim "given the Parties' prior course of dealing, where, "over a period of years" the defendant "administered and paid [the plaintiff's] substance abuse and treatment claims in a consistent manner" and "routinely preauthorized and certified treatment at [the plaintiff's] facilities for all levels of care and treatment." *Id.* at *1, 3. In contrast, Miami Back simply alleges, without reference to any period of time, that "Aetna either refused to pay the claims altogether or grossly underpaid Miami Back for its services . . . ." (*See* D.E. 1-1 at 8, ¶ 35.) These allegations are akin to the allegations rejected in *GVB MD, LLC*, 2019 WL 5260274, at *5–6, *RMP Enters., LLC*, 2018 WL 6110998, at *8, and *Peacock*, 2015 WL 2198470, at *5.

Accordingly, the Motion to Dismiss is **GRANTED** as to Count 4. The Court will, however, grant Miami Back leave to amend this claim to include factual allegations showing Aetna's *assent* to pay for the services that Miami Back provided to the Members. As such, Count 4 is **DISMISSED WITHOUT PREJUDICE.**

## D. PROMISSORY ESTOPPEL (COUNT 5)

Next, in Count 5, Miami Back asserts a promissory estoppel claim seeking reimbursements for unpaid medical treatments provided to Aetna's members. Specifically, Miami Back alleges that it only provided medical treatment to Aetna's Members *because* Aetna verified coverage and expressly authorized treatment. Aetna argues Count 5 should be dismissed because the alleged promises are not sufficiently definite.

To state a claim for promissory estoppel under Florida law, the complaint must allege facts that, if taken as true, would show: (1) the plaintiff detrimentally relied on a promise made by the defendant; (2) the defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of the plaintiff or a third person; and (3) injustice can be avoided only through the enforcement of the promise against the defendant. *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 302 (Fla. 1st DCA 1999) (citing *W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So. 2d 919, 920 (Fla. 1989)). Ultimately, the promise must be "definite" and of a "substantial nature," the evidence "clear and convincing," *W.R. Grace & Co.*, 547 So. 2d at 920, and the reliance "reasonable," *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. 3rd DCA 2006). *See also Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of Rhode Island*, 86 F. Supp. 2d 1155, 1165 (S.D. Fla. 2000) ("[P]romissory estoppel does not apply if the terms of the promise are indefinite.") (citing *Maccaferri Gabions, Inc. v. Dynateria, Inc.*, 91 F.3d 1431, 1443–44 (11th Cir. 1996)).

Here, the Court finds Miami Back's allegations are not sufficiently definite to state a claim for promissory estoppel. Miami Back alleges that "[p]rior to all non-emergent initial trial consultations with each new patient, [it] contacted [Aetna] to verify that each patient was covered by a health plan insured by and/or administered by [Aetna], and to obtain benefit information and pre-authorization." (D.E. 1-1 at 7, ¶ 29.) According to Miami Back, Aetna confirmed "the medical

services were covered and authorized the same." *Id.* at ¶ 30. In so confirming, Miami Back alleges Aetna provided "a reference number for future reference of the patients' insurance coverage details, indicating that Aetna would pay, at least in part, for the services rendered by the Plaintiff." *Id.* Finally, Miami Back alleges that "[b]ased upon the representations of Aetna during the benefit verifications communications," Miami Back performed medically necessary spine surgery and related medical treatments to Aetna's Members. *Id.* at ¶ 31.

Like *quantum meruit* claims, promissory estoppel claims also fail when they are premised only on an insurer's confirmation of coverage. For instance, in *Vencor Hosps. S., Inc. v. Blue Cross & Blue Shield of R.I*, the plaintiffs contacted the insurer "to verify coverage and amounts" and the insurer "acknowledged" the proposed treatment was covered under applicable insurance plans. 86 F. Supp. 2d at 1164. Noticeably absent were any allegations that the defendants made any acknowledgments "as to costs of a treatment." *Id.* Viewing the evidence in the light favorable to the plaintiffs, the district court found that the plaintiff could not reasonably rely on the confirmation of coverage to mean that the insurer would pay the full cost of such treatment. *Id.* at 1165, *aff'd sub nom.*, 284 F.3d 1174 (11th Cir. 2002); *see also Peacock*, 2015 WL 2198470, at *5 (citing *Vencor* and dismissing promissory estoppel claim premised on "indefinite confirmation of coverage"); *GVB MD, LLC*, 2019 WL 3409183, at *8, *report and recommendation adopted*, 2019 WL 3408925 (dismissing promissory estoppel claim where plaintiff alleged defendant authorized treatment but offered no "additional specifics" about the terms of the promise, such as the type of treatments the promise covered, the amount or extent of the reimbursements, or if the promise applied to some or all the Members).

Likewise here, Miami Back does not allege any specifics regarding what types of treatments, or to which Members, the alleged promises applied to. Furthermore, as to the amount or extent of reimbursements, while Miami Back alleges that providing a reference number for future inquiries

regarding insurance coverage details "indicat[ed] that Aetna would pay, at least in part, for the services rendered" by Miami Back (D.E. 1-1 at 7, ¶ 30), this really only alleges that Miami Back interpreted the reference number as a promise to pay—but it does not allege that Aetna made an affirmative promise to pay any amount of any of the services rendered, *see Vencor*, 86 F. Supp. 2d at 1165 (dismissing promissory estoppel claim where plaintiff did not allege the defendant "made any acknowledgments as to costs of a treatment").

In addition, to the extent Aetna made partial payments for certain treatments provided to some of its Members, even in conjunction with verifying coverage, such allegations taken as true still fail to demonstrate that Aetna made a sufficiently definite promise to pay. *See Sapphire Int'l Grp., Inc. v. Allianz Glob. Risks US Ins. Co.*, No. 18-Civ-80101, 2018 WL 8344837, at *3 (S.D. Fla. June 29, 2018) (dismissing for lack of definitiveness a promissory estoppel claim even where the defendant "made a partial settlement payment" and the plaintiff "was made to believe that the claim would be covered by [the defendant], and that there was no doubt that the claim would be covered").

In short, Miami Back fails to allege that Aetna made a sufficiently definite promise to pay any amounts for any procedures regarding any patients. For these reasons, the Motion to Dismiss is **GRANTED** as to Count 5. As with the *quantum meruit* claim, Miami Back may amend the Complaint to include additional factual allegations supporting the definitiveness of Aetna's alleged promises.

### E. DECLARATORY RELIEF (COUNT 6)

In Count 6, Miami Back seeks declaratory relief. Aetna argues this claim should also be dismissed because the allegations are not sufficiently definite. Miami Back counters that its request for declaratory relief is separate from its other claims, and proper because there is an ongoing controversy where Aetna continues to preauthorize treatments, but then either refuses to pay or grossly underpays claims.

While Miami Back appears to assert a claim for declaratory relief under the Florida Declaratory Judgment Act, because this case was removed to federal court on diversity jurisdiction grounds, the Court applies the federal Declaratory Judgment Act, 28 U.S.C. Section 2201. *See Incredible Investments, LLC v. Fernandez-Rundle*, 984 F. Supp. 2d 1318, 1323–24 (S.D. Fla. 2013) (collecting cases). As a practical matter, however, the analysis under both acts is the same. *Id.* at 1324 at n.1.

The Declaratory Judgment Act provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). District courts have "an ample degree of discretion" in adjudicating declaratory relief claims. *Kerotest Mfg., Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952).

But a declaratory relief claim that seeks a general declaration of rights and obligations is not sufficient to survive a motion to dismiss. *See Bencomo Enters. v. United Specialty Ins. Co.*, 345 F. Supp. 3d 1401, 1406 (S.D. Fla. 2018) ("Plaintiff's request for general declaratory relief is insufficient at the motion-to-dismiss stage.") (citing *Great Am. Ins. Co. v. Pino Kaoba & Assocs., Inc.*, No. 08-20847-CIV, 2008 WL 11333253, at *2 (S.D. Fla. Dec. 8, 2008) (dismissing declaratory relief claim that was "unclear" and "overly general," and that did not "indicate precisely what rights it pertain[ed] to . . . .")).

Here, the Court finds that Count 6 requests nothing more than a general declaration of rights. In the Complaint, Miami Back asserts "an actual, live controversy exists between Plaintiff and Defendant concerning the parties' rights and responsibilities in connection with insurance claims submitted by Plaintiff to Defendant, and such controversy will continue to exist unless declaratory relief is provided determining the parties' respective rights and obligations." (D.E. 1-1 at 14, ¶ 78.) Miami Back then generally requests—because it "is in doubt of its rights to receive benefits for such

services as a result of Defendant's actions," *id.* at 15, ¶ 81—that the Court "issue a declaratory judgment clarifying the parties' rights and obligations under Defendant's Plans, and grant such other relief as the Court deems proper" *id.* at 15.

As pleaded, this claim does not request any specific declarations as to any specific rights or obligations implicated by the "actual, live controversy." Thus, the Complaint simply leaves the Court left to infer what declarations are sought by Miami Back. The Court is not, however, required to make such inferences. *See Bencomo Enters.*, 345 F. Supp. 3d at 1406 ("While the Court could infer Plaintiff wants the Court to determine the outstanding coverage and causation issues between the parties through its claim for declaratory relief, such is not the claim that appears and the Court will not do Plaintiff's job for it.") (citing *Helman v. Udren Law Offices, P.C.*, No. 0:14-CV-60808, 2015 WL 1565335, at *5 (S.D. Fla. Apr. 8, 2015)).

The indefiniteness of Miami Back's request for a declaration of rights is underscored by Aetna's second and third arguments for dismissing this claim: that the Court cannot issue a general, sweeping declaration as to the medical necessity and reasonable pricing of both past and future services provided by Miami Back. For instance, as pleaded now, Miami Back asks the Court for a general declaration to resolve Miami Back's doubt as to its rights to receive benefits under numerous insurance plans, each of which likely has different terms and conditions of coverage, concerning services provided to different patients with different diagnoses. To account for these variations, a declaration of rights would require a case-by-case assessment.[8]

As currently pleaded, the Complaint fails to provide the Court with any guideposts for

---

[8] *Cf. Shenandoah Chiropractic, P.A. v. Nat'l Specialty Ins. Co.*, 526 F. Supp. 2d 1283, 1285–86 (S.D. Fla. 2007) (dismissing declaratory relief claim requesting "across-the-board" relief because "the fact finder must, on a case by case basis, construe the term 'reasonable' and determine whether or not the insurer's evaluation of the bills submitted fits the definition") (citing *State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244, 1245–46 (Fla. 2d DCA 2002) ("The fact-finder must construe the word 'reasonable' and determine whether the insurance company's evaluation of medical bills fits the definition on a case-by-case basis.")).

declaring the parties' rights.[9] To survive dismissal, the Complaint must at minimum seek declarations with some level of specificity. For these reasons, the Motion to Dismiss is **GRANTED** as to Count 6 as well. Once more, Miami Back may amend its declaratory relief allegations.

### IV.    CONCLUSION

For these reasons, it is

**ADJUDGED** that the Motion to Dismiss is **GRANTED** as follows: Count 3 is **DISMISSED WITH PREJUDICE**, and Counts 1, 4, 5, and 6 are **DISMISSED WITHOUT PREJUDICE** and with leave to amend. It is further

**ADJUDGED** that Miami Back may file an Amended Complaint no later than **Friday, January 10, 2020**. Should Miami Back fail to timely file an Amended Complaint, Aetna will be required to answer Count 2 no later than **Friday, January 24, 2020**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this ___19___ of November 2019.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record

---

[9] At the very least, Miami Back's Opposition fails to counter in any meaningful way Aetna's arguments for dismissal.